# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

JAMES A. HAUSER,

                    Plaintiff,

          v.                                                    Case No. 08-CV-321

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.

_____

# ORDER

Plaintiff James Hauser ("Hauser") filed this action for judicial review of the Commissioner of Social Security's decision denying his application for disability benefits. Hauser alleges disability beginning in June 2005,[1] arising from a myriad of issues, including whole-body pain, muscle weakness, and foot numbness. Hauser asserts that the agency's conclusions and findings of fact are not supported by substantial evidence and are contrary to law. For the reasons set forth below, the court finds that portions of the Administrative Law Judge's ("ALJ") decision denying Hauser disability benefits are not supported by substantial evidence and will remand for further proceedings.

_____

[1]Hauser initially claimed a disability onset date of January 10, 2004, in his application for disability benefits. However, he amended the alleged onset date to June 10, 2005, by correspondence from his attorney and confirmed the amended date at his video hearing before the ALJ on June 6, 2007. (Tr. 12, 71, 122).

## BACKGROUND

Hauser initially filed an application for Disability Insurance Benefits in March 2005. The agency denied his initial application and also upon reconsideration. Hauser appeared with counsel before an ALJ for a video hearing on June 6, 2007. The ALJ issued a November 2007 decision finding that Hauser was not disabled and that he could perform his past relevant work. The Social Security Appeals counsel subsequently denied review, rendering the ALJ's decision the final decision of the Commissioner. Hauser filed the instant request for judicial review on April 17, 2008.

Hauser was 60 years old at the time the ALJ determined he was not entitled to disability benefits. (Tr. 9, 71). He completed the 12th grade and worked as a security guard, machine operator, and driver for a series of employers within the 15 years preceding his application. (Tr. 83, 101-07).

Hauser first reported foot numbness and muscle pain in early 2005. He complained of muscle pain, retinal bleeding and right groin discomfort arising from a 1998 hernia repair. (Tr. 134). However, Hauser also reported that he took no medications and could lift 50 pounds, push a lawn mower, shovel snow, and drive approximately 15 hours per week for work. (Tr. 134). A state agency physician completed a Residual Functional Capacity ("RFC") assessment based on Hauser's medical record and determined that he could lift/carry twenty-five pounds frequently, lift fifty pounds occasionally, stand and/or walk six hours a day and sit for a total of six hours a day. (Tr. 152-57). Hauser's physician, Dr. Maruska, referred him for

-2-

physical therapy in September 2005. (Tr. 190).  Hauser's therapy was discontinued in November 2005 because he showed no significant improvement, though the records note that his compliance with therapy was questionable. (Tr. 189).

Hauser was again examined in December 2005.  He was found to have normal cervical spine range of motion, normal gait, as well as no increase in symptoms resulting from toe, heel and tandem walking.  The examiner further noted that "it is uncertain as to the exact etiology of [Hauser's] symptoms in light of his negative physical exam." (Tr. 185).  Hauser was examined by Dr. Hord in May and July 2006 and she noted a moderate bone spur and her impression that Hauser suffered from multifocal pain syndrome. (Tr. 177, 180, 182).  Dr. Hord also recorded that Hauser's electromyogram nerve conduction studies were negative, that he walked without support, and that he continued to report numbness of his feet.  (Tr. 178).

Hauser reported continued foot pain and numbness, as well as right-side groin pain during his October and November 2006 examinations.  (Tr. 162, 164).  His treating physician noted peripheral neuropathy and plantar fasciitis.  (Tr. 163). Hauser visited the Family Foot Clinic in Fond du Lac in early 2007.  (Tr. 192).  He was assessed with peripheral neuropathy, diabetes mellitus, and plantar fasciitis and prescribed Lyrica for pain.  (Tr. 192, 193).

Case 2:08-cv-00321-JPS   Filed 03/16/09   Page 3 of 22   Document 23

# ANALYSIS

When reviewing a Social Security benefits determination, the court must uphold the agency's findings if they are supported by substantial evidence and were reached using correct legal standards. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not reevaluate the facts, re-weigh the evidence, or substitute its own judgment for that of the agency. *Edwards*, 985 F.2d at 336. Though the standard of review is generous, where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). The ALJ need not do a written evaluation of every piece of evidence, but the ALJ must articulate his or her assessment of the evidence so that the court may trace the ALJ's reasoning. *See Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996).

To qualify for disability benefits under the Social Security Act, the claimant must be unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting 42 U.S.C. § 423(d)(1)(A)). The Social Security regulations create a five-step, sequential

-4-

test for determining whether a claimant is disabled. *Id.* Under this test, the administrative law judge must address the following questions: 1) Is the claimant presently employed? 2) Is the claimant's impairment severe? 3) Do the impairments meet or exceed any of the specific impairments the Secretary acknowledges to be conclusively disabling? 4) Have the claimant's impairments limited his or her remaining or residual functional capacity so that he or she is no longer able to perform the demands and duties of a former occupation? 5) Is the claimant unable to perform any other work in the national economy given his or her age, education and work experience? *Wolfe v. Shalala*, 997 F.2d 321, 322-23 (7th Cir. 1993). If the ALJ reaches a negative conclusion at any step, other than at step three, this conclusion precludes a finding of disability. *Id.* at 323.

The ALJ conducting Hauser's disability benefits hearing determined that he was not disabled at step four of the sequential evaluation process because he is capable of performing past relevant work as a machine operator and security guard. (Tr. 21). Further, Hauser's residual functional capacity did not preclude the work-related activities required by this past relevant work. The ALJ concluded that Hauser was not under a disability, as defined by the Social Security Act, though he has the severe impairments of arthralgias, diabetes, neuropathy, costochondritis, plantar fasciitis, foot spur, degenerative disc disease, and degenerative joint disease. (Tr. 15, 22).

Case 2:08-cv-00321-JPS   Filed 03/16/09   Page 5 of 22   Document 23

Hauser disputes the ALJ's determination and alleges that she committed three particular errors in reaching her decision, rendering it unsupported by substantial evidence. First, Hauser argues that the ALJ failed to properly evaluate his ability to do his past relevant work in her step four analysis. Second, Hauser argues that the ALJ failed to make a proper credibility determination. Finally, Hauser argues that the ALJ failed to properly consider the impairment listings in her step three analysis. The court will consider each argument in turn.

**1.      Evaluation of Past Relevant Work**

Hauser argues that the ALJ erred by not properly evaluating his ability to do his past relevant work because she did not specify the duties involved in his previous jobs or perform an adequate "function-by-function" assessment. He further asserts that his past security guard work was not substantial gainful activity.

Step four of the five-step sequential process to evaluate disability requires the ALJ to  consider the applicant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the applicant can still do past relevant work, the ALJ determines that he or she is not disabled. *Id.* Past relevant work is defined as substantial gainful employment performed in the not too remote past. *Smith v. Barnhart*, 288 F.3d 251, 252 (7th Cir. 2004) (quoting 20 C.F.R. §§ 404.1560(b)(1), 404.1565(a)). Work performed in the "not too remote past" means past relevant work performed within the past 15 years. 20 C.F.R. § 404.1560(b)(1).      Additionally, to constitute substantial gainful employment, an applicant must have earned a specified minimum amount from that

Case 2:08-cv-00321-JPS   Filed 03/16/09   Page 6 of 22   Document 23

past work. *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006). For Hauser's

machine operator and security guard work, he must have monthly earnings

averaging more than $500 to be considered substantial gainful employment. *See* 20

C.F.R. § 404.1574(b)(2)(ii)(B).

### a. Portions of the Step Four Analysis Supported by Substantial Evidence

Hauser alleges "numerous" flaws in the ALJ's step four finding. However,

these arguments are unavailing because the particular alleged errors do not create

a lack of substantial evidence supporting the ALJ's decision. First, Hauser notes

that the ALJ erred in her step four analysis because the analysis misrepresents the

Vocational Expert's ("VE") testimony at his hearing. The ALJ's step four finding

deems Hauser capable of performing his past relevant work as a machine operator

and security guard and states in relevant part:

> The vocational expert testified that these jobs were light in exertional
> requirements and semiskilled in nature, and did not require the
> performance of work-related activities precluded by the residual
> functional capacity as set out in Finding 5 above. In comparing the
> claimant's residual functional capacity with the physical and mental
> demands of this work, the vocational expert indicated that those jobs
> could be performed both as the claimant actually performed them and
> as generally performed.

(Tr. 21-22). However, the VE never testified that Hauser could perform the jobs of

a machine operator or security guard as he *actually* performed those jobs and never

considered the mental demands of the work. However, the VE did testify that

Hauser could perform the past relevant work as *generally* performed. Therefore, the

-7-

misrepresentations are harmless. The VE's testimony supports the ALJ's conclusion that Hauser can perform his past relevant work as a machine operator and security guard as those jobs are generally performed in the economy. (Tr. 213). Further, the VE's testimony takes into account Hauser's ability to do work at a light exertional level and classifies the machine operator and security guard jobs as falling within the light exertional classification. (*See* Tr. 213). Thus, the ALJ's misrepresentations do not undermine her determination that Hauser can perform his past relevant work because the VE's testimony supports Hauser's ability to perform machine operator and security work as generally performed.

Hauser next challenges the ALJ's step four analysis by arguing that the ALJ failed to account for the VE's testimony that a person needing to alternate between positions could not perform the work of a machine operator or security guard. (Pl.'s Br., p. 7). However, this argument similarly fails to undermine the ALJ's determination. Hauser merely asserts the ALJ's failure to account for the need to alternate positions. He does not argue that he needs to alternate between positions, rendering him unable to perform the jobs or cite evidence from the record to support this claim. (Pl.'s Br., p. 7). The court declines to make Hauser's argument for him.

In addition, Hauser points to the ALJ's and VE's failure to specify which of Hauser's two previous security jobs Hauser could currently perform or list the specific physical requirements of that previous job. The court finds that identifying which past security job Hauser could perform is unnecessary because the ALJ found

-8-

that Hauser could perform security guard work as generally performed. Thus, the ALJ's finding is not inadequate for failing to identify a specific past job and its particular requirements. Hauser's ability to do past relevant work as generally performed supports the ALJ's step four finding, even if one of Hauser's previous security positions exceeded the specific general requirements for such work. *See Anderson v. Bowen*, 868 F.2d 921, 925 n.11 (7th Cir. 1989) ("That the demands of [the plaintiff]'s own past work exceeded the demands of that work as generally found in the economy is not determinative.").

Hauser further argues that the ALJ wrongly considered his past security guard work as substantial gainful activity ("SGA") in its step four evaluation. As noted above, 20 C.F.R. § 404.1574(b)(2)(ii)(B) states that a disability benefits applicant must have earned a specified minimum amount from his past work in order for that work to constitute substantial gainful activity. For the years in which Hauser worked as a security guard, 1995 and 1996, the regulation requires that his "monthly earnings averaged more than" $500 in order for the work to be SGA. 20 C.F.R. § 404.1574(b)(2)(ii)(B). However, a question arises because Hauser worked at each security guard job for less than one year. Hauser's security guard earnings average more than $500 for the months in which he was employed, but average less than $500 per month over a twelve-month period.

Therefore, whether Hauser's security guard work constitutes SGA depends upon whether the regulation requires earnings of more than $500 only during the

Case 2:08-cv-00321-JPS    Filed 03/16/09    Page 9 of 22    Document 23

months of employment, or whether the applicant must average $500 per month for the entire year. Hauser argues that his average earnings for the specific months he worked are irrelevant. Instead, Hauser asserts that he must have earnings of more than $6,000 for the year (12 x $500 monthly earnings) in order for his security guard work to constitute SGA. In response, the government points out that Hauser worked for J.J. Protective Services and Burns Security as a security guard from October 20, 1995, to March 3, 1996, earning $2,890.63 and $2,599.46 respectively. (Tr. 66-67, 101). Therefore, Hauser averaged more than $500 per month if his total earnings are divided by the nearly five months of work.

The court finds that Hauser's work as a security guard in 1995 and 1996 constitutes substantial gainful activity, qualifying for consideration as past relevant work. Though the court gives Hauser's counsel credit for creative and zealous representation, the court does not credit his argument. The federal regulations define earnings showing substantial gainful activity by reference to "monthly earnings averaged." 20 C.F.R. § 404.1574(b)(2)(ii)(B). They do not define such earnings by reference to yearly totals. Therefore, the court would apply a contrived interpretation by reading "monthly earnings averaged" to require a yearly earnings total in order to qualify as substantial gainful activity. If the agency intended to require an annual amount, it could easily have written the rule to read "yearly earnings totaling more than..." The agency chose not to. The rule language does not discuss yearly earnings and this court will interpret the earnings amount requirement to apply only

-10-

to the months of employment. Thus, the court finds that Hauser's security guard work, averaging more than $500 per month, is properly considered in the ALJ's step four analysis.

Hauser also criticizes the ALJ's residual functional capacity ("RFC") determination, arguing that the ALJ inadequately conducted a function-by-function assessment. An RFC is an assessment of an individual's ability to do "sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Gotz v. Barnhart*, 207 F. Supp. 2d 886, 896 (E.D. Wis. 2002). An ALJ determines what an individual is still capable of, despite limitations, based on all of the relevant evidence. *Converse v. Apfel*, 144 F. Supp. 2d 1045, 1049 (N.D.Ind. 2000) (citing 20 C.F.R. § 404.1545(a)). This assessment evaluates physical abilities such as "sitting, walking, lifting, carrying, pushing, pulling, or other physical functions." 20 C.F.R. § 404.1545(b). Only after an ALJ evaluates a plaintiff's work-related abilities on a function-by-function basis does he or she then express the RFC in terms of the exertional level of the work, such as sedentary, light, medium, heavy, and very heavy. *Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1036 (E.D. Wis. 2004). However, the determination of the RFC is reserved to the Social Security Administration. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995) (citing 20 C.F.R. § § 404.1527(e)(2), 416.927(e)(2)).

The court finds that the ALJ provided an adequate analysis of Hauser's physical abilities prior to expressing Hauser's RFC as "light" in terms of an exertional

-11-

category.  The ALJ addressed the independent physical functions of sitting, walking, standing, lifting, stooping, and crouching.  The ALJ's findings are as follows:

> ...claimant has the residual functional capacity to perform light work (lifting up to 20 pounds occasionally and 10 pounds frequently; and standing/walking six hours and sitting two hours of an eight-hour workday, with normal breaks (which are generally provided every two hours, plus a meal period).  The undersigned further finds that claimant is limited to only occasional stooping and crouching. (If a person can stoop/crouch occasionally (from very little up to one-third of the time) in order to lift objects, the light occupational base is virtually intact (SSR 85-15)).

(Tr. 15).  The ALJ sufficiently evaluated Hauser's work-related abilities before deeming him capable of "light" exertional level work.  The function-by-function assessment considered the appropriate physical limitations and the court deems it adequate.

Finally, Hauser argues that the ALJ did not properly assess Hauser's incapacity to work a full-time, sustained schedule, as required by Social Security Regulation 96-8p.  The regulation states in relevant part:

> Ordinarily, [residual functional capacity] is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

(SSR 96-8p).  Hauser claims that the ALJ failed to account for evidence in the record showing that his current employer made accommodations for his "disability." (Pl.'s Br. pp. 10-11).  However, the evidence Hauser points to is his own testimony

-12-

asserting that his current employer "kind of" allows him to set his own hours and leave if needed. (Tr. 210).

The ALJ's decision is not flawed because the ALJ neglected to mention Hauser's cited testimony. Indeed, Hauser's argument is a minor point when reading the ALJ's decision in its entirety. *See Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) ("...the court will nonetheless give the opinion a commonsensical reading rather than nitpicking at it."). First, the fact that Hauser does not currently work a forty-hour week is not incontrovertible evidence that he is unable to work such a schedule. If a simple showing of part-time work or flexible hours proved disability, there would be no need for hearings or written decisions by administrative law judges. Second, the court determined above that the ALJ provided an adequate function-by-function assessment of Hauser's work-related abilities. The ALJ's failure to cite testimony that Hauser "kind of" sets his own hours and is "allowed to leave" if he needs to does not establish the ALJ's failure to build a "logical bridge from the evidence to [her] conclusion." *Id*. Finally, the ALJ's decision did take into account evidence regarding Hauser's current employment driving cars for Wisconsin Auto Auction. However, the ALJ found that the evidence undermined Hauser's credibility because it showed his "abilities are somewhat greater than the claimant generally portrays." (Tr. 21). Therefore, the ALJ's step four evaluation is not flawed for failing to cite Hauser's testimony about his current work flexibility.

-13-

**b.     Inadequacies in the Step Four Evaluation**

The court finds Hauser's remaining challenges to the step four evaluation meritorious and will vacate and remand portions of the ALJ's decision.  First, the ALJ failed to determine the requirements of a machine operator or security guard position and then evaluate Hauser's ability to fulfill those requirements.  In order to deem a plaintiff capable of performing the demands of past relevant work, the ALJ must "ascertain the demands" of a plaintiff's former work in relation to the claimant's present physical capacities to determine whether he is indeed capable of returning to that work.  *Strittmatter v. Schweiker*, 729 F.2d 507, 509 (7th Cir. 1984); *See also Novak v. Barnhart*, 180 F. Supp. 2d 990, 997 (E.D. Wis. 2001).  Though the court previously determined that the ALJ's decision was not flawed based on her failure to determine which former security job Hauser is still capable of performing and the specific requirements for that particular job, the decision *is* flawed for failing to provide an evaluation of the general requirements for his prior work.

The ALJ's decision provides no job description or evaluation of job requirements for either a machine operator or security guard.  Instead, the decision refers only to the VE's testimony regarding the jobs' "light" exertional level and "semiskilled" nature. (Tr. 21).  However, such description of the jobs' demands are insufficient. *See Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir. 1991) (finding that the ALJ's classification of the plaintiff's previous job as "unskilled at the light exertional level" did not meet the requirement for facts describing previous duties and an

-14-

assessment of the plaintiff's ability to perform those duties). Therefore, the court will remand the case and order the ALJ to specify the duties involved in the past relevant work and assess Hauser's ability to perform the required tasks.

Second, the ALJ failed to determine whether the VE's testimony conformed to the Dictionary of Occupational Titles ("DOT"). Social Security Ruling 00-4p requires the ALJ to first ask the vocational expert whether his testimony conflicts with the DOT, and then elicit a reasonable explanation for any such discrepancy. *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006). The ALJ has an affirmative duty to make this inquiry before relying on the expert's evidence to support a disability determination or decision. *Id.* Hauser notes the ALJ's failure to ask the VE whether his testimony conformed to the DOT. In addition, the VE classified Hauser's machine operator position running a pea harvester and corn picker as "light level work." (Tr. 212). Hauser argues that this testimony conflicts with the DOT, which classifies tractor driving as medium or heavy work. (Tr. 212).

Prior to questioning the vocational expert at Hauser's hearing, the ALJ stated: "I'll assume your testimony is consistent with the Dictionary of Occupational Titles." (Tr. 212). The government implies that an "assumption" of consistency is sufficient. However, this court disagrees. The ALJ neglected to ask the VE whether his testimony conflicted with the DOT, in violation of SSR 00-4p. An ALJ's failure to make this inquiry, particularly when the vocational expert's testimony presents a conflict with the DOT, merits remand of the case. *See Id.* at 736; *Earl v. Astrue*, 2008

Case 2:08-cv-00321-JPS   Filed 03/16/09   Page 15 of 22   Document 23

WL 2078618, at *13 (N.D.Ind. May 14, 2008); *Spencer v. Astrue*, 2008 WL 1836669, at *10 (N.D.Ind. Apr. 22, 2008); *Baxter v. Astrue*, 2008 WL 222291, at *3 (S.D.Ind. Jan. 25, 2008); *Keener v. Astrue*, 2008 WL 687132, at *16 (S.D.Ill. Mar.10, 2008); *Washnieski v. Astrue*, 2008 WL 3981987, at *7 (E.D. Wis. Aug. 22, 2008). Thus, the court will remand the case so the ALJ may perform the necessary inquiry of the vocational expert.

Third, Hauser's prior work as a machine operator does not constitute past relevant employment because Hauser's earnings do not qualify as substantial gainful activity. Hauser was employed by the Friday Canning Corporation as a machine operator from April 1, 1995, until October 1, 1995. (Tr. 66, 101). During this six-month period, he earned a total of $2,686.34, averaging $447.72 per month. (Tr. 66). Hauser's monthly earnings from his machine operator work constitute less than the $500 "monthly earnings average" required for substantial gainful activity. *See* 20 C.F.R. § 404.1574(b)(2)(ii)(B). The government argues that mistaken identification of the machine operator work is harmless because the ALJ also found Hauser's security jobs to be past relevant work. The government is correct. The ALJ's finding that Hauser can perform his past relevant work as a security guard renders the mistake inconsequential for step four evaluation. However, the court will vacate the

-16-

portion of the decision finding that Hauser's machine operator work constitutes past relevant work[2].

## 2. Credibility Determination

In addition to his step four analysis argument, Hauser asserts that the ALJ's decision is not supported by substantial evidence because she failed to properly evaluate his credibility. An ALJ's credibility determination is entitled to special deference and will not be disturbed unless it is patently wrong. *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *Diaz v Chater*, 55 F.3d 300, 308 (7th Cir. 1995). Review of credibility determinations made by administrative law judges of the Social Security Administration is highly limited because the court "lacks direct access to the witnesses, lacks the trier's immersion in the case as a whole, and when reviewing decisions by specialized tribunals also lacks the trier's experience with the type of case under review." *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). Thus, the district court reviews an ALJ's credibility determination under a very deferential standard. However, courts have greater freedom to review such determinations when they are based on "objective factors and fundamental implausibilities." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 354 (7th Cir. 2005).

---

[2]Hauser also argues that his machine operator work cannot constitute past relevant employment because it did not occur within the preceding 15 years. However, based on the record, Hauser's machine operator work occurred in 1995, less than 15 years prior to the ALJ's November 21, 2007 ruling. (Tr. 101). Given that the work occurred during the relevant time period, the court does not vacate the ALJ's decision finding that Hauser's machine operator work constitutes past relevant work on this basis. Instead, the court vacates only on the basis that the machine operator work does not meet the requirements for average monthly earnings under 20 C.F.R. § 404.1574(b)(2)(ii)(B).

The court cannot find that the ALJ's credibility determination is "patently wrong" based on the record. There are several factors for an ALJ to consider in evaluating the credibility of an applicant's testimony and complaints, including: the absence of an objective medical basis supporting the degree of severity of subjective complaints alleged; the claimant's daily activity; the duration, frequency, and intensity of pain; the precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. *Scheck*, 357 F.3d at 703; *see also* SSR 96-7p. The ALJ in the instant case considered the objective medical evidence and other relevant factors in concluding that Hauser's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."[3] (Tr. 16).

The ALJ covered the majority of these factors in her decision. She noted inconsistencies in Hauser's statements about functional abilities, such as his initial claim that he could only sit for two to three hours and his later admission that he could sit/drive for five hours for his present job. (Tr. 16). The results of Hauser's physical examinations also rendered inconsistent results, sometimes resulting in positive results and other times generating negative results. The ALJ cited these varying exam responses as "strongly" suggesting that Hauser misrepresented his

---

[3]The ALJ found that Hauser's medically determinable impairments could reasonably be expected to produce the symptoms alleged, though she ultimately found that his claims regarding the symptoms' persistence, intensity and limiting effects were not wholly credible. (Tr. 16). The fact that Hauser's impairments *could* result in the alleged symptoms does not undermine the ALJ's credibility finding. An ALJ may find a claimant's symptoms not credible even where there is a medically determinable impairment that could reasonably be expected to produce the symptoms the complainant alleges. *Metzger v. Astrue*, 263 Fed. Appx. 529, 533 (7th Cir. 2008)(citing *Scheck v. Barnhart*, 357 F.3d 697, 701-03 (7th Cir. 2004)).

-18-

symptoms and undermining his credibility. (Tr. 20). Further, the ALJ noted that Hauser's subjective complaints of all-over body pain lacked medical verification. She also cited the complete absence of restrictions recommended by any treating or examining doctor. (Tr. 20). The ALJ next relied upon the limited nature of Hauser's treatment in contrast with his claims of debilitating pain and impairments. She noted that his treatment was "routine and conservative in nature" and that until shortly before the hearing, the only medication Hauser took was occasional aspirin. (Tr. 20-21). Finally, the ALJ cited Hauser's "vague and general" description of his symptoms as evidence that he overstated his limitations and symptoms. (Tr. 20). Thus, the ALJ cited the lack of objective medical documentation, the inconsistent results of physical examinations, the severity of Hauser's subjective complaints, the lack of any physician-imposed functional restrictions, and medications used by Hauser as bases for finding that Hauser's testimony was not wholly credible.

The ALJ cites an additional reason for her credibility determination which Hauser particularly opposes. The ALJ refers to unemployment compensation Hauser received for one and a half years after his amended alleged onset date, adversely impacting his credibility. (Tr. 20). To be eligible for unemployment, the ALJ noted that Hauser had to show availability and capability to be otherwise employed. Therefore, Hauser claimed that he was capable of working to the Unemployment Compensation Board, while simultaneously alleging disability in his application for disability benefits. Hauser argues that such reasoning sets up a

-19-

"Catch 22" for claimants because applicants for disability benefits must apply for unemployment compensation as a prerequisite to receiving benefits.  (Pl.'s Br., p. 13).  However, the rule he cites requires an applicant for SSI benefits, not disability benefits, to apply for other benefits for which they may be eligible.  20 C.F.R. § 416.210(a-b).  Regardless of whether the ALJ properly noted Hauser's simultaneous receipt of unemployment compensation, she cited a series of diverse factors in concluding that Hauser's claims were incredible.  Therefore, the issue does not impact this court's finding that the ALJ's credibility determination was not "patently wrong."

3.     **Consideration of Impairment Listings**

Lastly, Hauser alleges that the ALJ failed to properly consider and evaluate medical listings in deeming him not disabled.  Step three of the five-step, sequential test for determining whether a claimant is disabled asks whether the claimant's impairments meet or exceed any of the specific impairments listed in 20 C.F.R. § 404, Subpart P, App. 1, which the Secretary acknowledges to be conclusively disabling.  20 C.F.R. § 404.1520(a)(iii); *Wolfe*, 997 F.2d at 322-23.  If the disability claimant has an impairment meeting or equaling any of the listed impairments, then he is eligible for benefits under a presumptive disability theory.  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing 20 C.F.R. § 404.1520(d)).  A claimant demonstrates presumptive disability by showing that his impairment is "accompanied by symptoms that are equal in severity to those described in a specific listing." *Id.*

-20-

In conducting the step three analysis, an ALJ should mention the specific listings she is considering. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). A failure to mention these listings, combined with a "perfunctory analysis," may result in a remand of the case. *Id.*

The court finds that remand is appropriate because the ALJ conducted an inadequate step three analysis. The ALJ's step three analysis consists of one sentence stating: "The claimant does not have an impairment or combination of impairments that meets or medically equals the criteria of any listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 15). The ALJ fails to mention Listing 9.08, Diabetes mellitus, despite evidence in the record noting that Hauser suffered from diabetes. Hauser was twice assessed as having diabetes mellitus by two different treaters, once by an examining PA and once by a physician. (Tr. 19). In addition, the ALJ herself found that Hauser's diabetes constituted a "severe impairment" in her findings of fact and conclusions of law. (Tr. 15). The ALJ's step three analysis also fails to evaluate the medical evidence supporting satisfaction of the listing's requirements, such as Hauser's documented neuropathy demonstrated by a shuffling gait. (Tr. 18). *See* 20 C.F.R. Part 404, Subpart P, App. 1, 9.08(A); www.ssa.gov/disability/professionals/bluebook/9.00-Endocrine-Adult.htm (last visited March 5, 2009). These failures, combined with the ALJ's one sentence, perfunctory analysis, requires the court to remand the case to allow for a more thorough step three analysis. *See Ribaudo*, 458 F.3d at 583-84. (finding that ALJ's two sentence

Case 2:08-cv-00321-JPS   Filed 03/16/09   Page 21 of 22   Document 23

analysis and failure to mention or evaluate listing required remand); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003).

## CONCLUSION

The court will vacate and remand portions of the ALJ's decision to allow for specification of the duties involved in Hauser's past relevant work, assessment of Hauser's ability to perform those duties, as well as inquiry of the vocational expert regarding the DOT. Further, the court will vacate the portion of the ALJ's decision finding that Hauser's machine operator work constitutes past relevant work. Finally, the court vacates the ALJ's step three findings regarding medically equivalent impairments and remands for a more comprehensive analysis.

Accordingly,

**IT IS ORDERED** that the ALJ's decision regarding Hauser's social security disability benefits application is **VACATED** and **REMANDED** for further proceedings consistent with this opinion.

The clerk is ordered to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 16th day of March, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

-22-